Your honors, first case of the morning, call 209-1068, Virgie v. Bond Drug Company of Illinois. On behalf of the Appalachians, Ms. Stacey Lynch. On behalf of the defendant, Appalachians, Mr. Garrett L. Long Jr. Ms. Lynch. Good morning, your honors. May it please the court? My name is Stacey Lynch and I represent Barbara and Earl Burtsche, the plaintiffs Appalachians in this matter. Your honors, I'd like to reserve three minutes for rebuttal. Sure. Standard procedure, you'll have that, yes. Thank you. It appears that the duty argument that was addressed in plaintiff's opening brief has been conceded by the defendant. And the only remaining issue before this honorable court is the issue of whether the trial court erred in granting summary judgment to the defendant on the issue of proximate cause. Your honors, would you like a brief restatement of the facts? That's probably not necessary, because I'm pretty familiar with them. Okay. Mrs. Burtsche has alleged in this case that her injuries are the direct and proximate cause of the defendant, Appalachian, negligently overfilling her prescription of prednisone. The question of the foreseeability of her injuries is the main issue that's remaining before the court today. The question is not whether it would be appropriate for a doctor to prescribe a three-day, five-day, or even a ten-day dose of prednisone. The question is not whether it would be appropriate for the pharmacy, excuse me, the question is whether it is appropriate for the pharmacy to deviate from the doctor's prescription without consulting the doctor, and whether it was foreseeable that doubling the prescription that was given to Mrs. Burtsche would cause harm to that patient. So the only issue that we are evaluating today is proximate cause. As your honors know, there are two prongs of proximate cause that are evaluated in the case law, and in the briefs in this case, it's cause in fact and legal cause. But before I go into the specific details of cause in fact and legal cause, I don't want to gloss over what for me is an important issue, the fact that proximate cause should have allowed for the jury in this case to decide. Courts in this state have consistently stated that proximate cause should only be decided as a matter of law when the material facts are undisputed, and there's no difference in the judgment of reasonable persons as to the inferences to be drawn therefrom. Appellants respectfully submit it was inappropriate for the trial court to decide the issue of proximate cause as a matter of law. When the plaintiff in this case had several physicians, including several independent treating physicians, that gave her favorable testimony on proximate cause, and the defendant essentially had none other than its retained expert witness in the form of an affidavit. And it's the plaintiff's contention that if the affidavit of the defendant's expert is to be utilized and relied on by the court, which was attached to their motion for summary judgment, then there's no reason why plaintiff's expert affidavit, which was attached to her response, should also not be considered by this honorable court. Now, back to the cause in fact and legal cause issues before this court. To determine cause in fact, Illinois relies on the but-for test. That's a relatively straightforward test, and it asks whether or not the plaintiff's injuries would have occurred but for the defendant's negligence. It is clear in this case that Walgreens was a but-for cause of Mrs. Burchie's injuries. Mrs. Burchie's symptoms began on day seven of her prescription. If Walgreens had not incorrectly filled the prescription to go beyond the intended five-day prescription and instructed her to take the medicine for ten days, then Mrs. Burchie would not have been taking prednisone on day seven and would not have been injured as a result, and she would not have developed the steroid psychosis that she still suffers from today. Counsel, let me just interject for a second. Sure. Taking this in chronological order, the trial judge struck Dr. Hall's affidavit extensively on the basis it contradicted his deposition testimony, correct?  And what is your position on whether or not that was in fact the case? It is plaintiff's contention that the affidavit of Dr. Hall was not contradictory to his deposition testimony. The fact of the matter is foreseeability was not raised by the defendant in any of the pleadings until they filed a motion for summary judgment. So although they asked a few questions of Dr. Hall in his deposition regarding foreseeability, it wasn't until they filed a motion for summary judgment, plaintiff contacted Dr. Hall, got him to offer an additional affidavit expanding on some of his opinions on proximate cause and foreseeability, but not in plaintiff's position were they contradictory. And even if they were, Your Honor, contradictory, that just goes to prove plaintiff's point more that the weighing of the evidence was improper and should have gone to the jury to decide, even if that were the case. Now, back to the... Well, I've got to clarify one thing, though. Even if the affidavit contradicted his deposition testimony, but isn't the rule that that's the reason the trial judge struck it? You cannot proffer an affidavit that contradicts the deposition testimony, right? That was one of the reasons that he gave that for, yes. But isn't that correct? I mean, whether it contradicts is an issue you can debate, but I don't think it's fair to say that even if it contradicts, it still comes in. I think the rule is if it contradicts, it doesn't come in. So your position, your first position is an arguable one, that it doesn't contradict, but I don't think the even-if argument flies under this rule, does it? I would say technically, Your Honor, you're probably correct, that if it is specifically contradictory to something that he said in his deposition, that technically speaking, it would not be allowed in, although that is not what plaintiff does not concede is contradictory in this case. Okay. But I would agree with that, Justice O'Malley, that if it is contradictory, that it should not have been allowed in. Legal cause, on the other hand, is intertwined with public policy. Legal cause is established that the defendant's conduct is so closely tied to the plaintiff's injury that he should be legally responsible for it. At the heart of proximate cause is the public policy determination that liability should not extend down a potentially endless chain of causation. Like many areas of the law, this policy is sound in theory but difficult in practice. The basic test of legal cause is whether the injury is of the type that a reasonable person would foresee as a consequence of his or her actions. The question here is whether Walgreens is a legal cause of Mrs. Virtue's injuries, whether Mrs. Virtue's injuries are the types of harms that were reasonably foreseeable. Plaintiff's evidence in support of the foreseeability of harm with regard to the issue of causation is as follows. Dr. Chase was one of the plaintiff's independent treating physicians. She testified that Mrs. Virtue had no prior psychiatric issues. She said that Dr. Chase stated that Mrs. Virtue's steroid psychosis was a result of the prednisone prescription. And Dr. Chase also stated that higher doses of steroid medications are more likely to cause this type of adverse reaction. Higher dose or longer duration? Do you mean a higher dose or longer duration of the same dose? Dr. Chase specifically stated higher doses of steroid medications are more likely to cause this. Regardless of how long? Is the length of the prescription at issue here really not the dose? Yes, it is. The dose is determined by the doctor? Yes, it is, but that testimony came from Dr. Hall, which I'll get to in just a second, not Dr. Chase, the other independent treating physician. With regard to foreseeability, Dr. Chase testified that steroid psychosis is one of the risk factors associated with taking prednisone and that this side effect is actually listed in the literature that accompanies the medication. Dr. Hall was plaintiff's retained psychiatric expert. He testified that Mrs. Virtue would not have suffered from steroid psychosis if Walgreens would have given her the appropriate amount of pills and fulfilled the prescription for five days like it should have been filled. Dr. Hall testified that while it is possible to have a reaction of prednisone even with a five-day prescription, it is his opinion that if you stop the steroids prior to the sixth day of use, then you don't see this type of adverse reaction. Wasn't really his testimony more that he said if you aren't displaying symptoms when you stop, regardless of when that is, whether it's on day three, five, seven, or even ten, that then there's a likelihood you won't develop it? He did testify to that. He did say that. Okay. There is a likelihood they would not. He also testified that the likelihood of the symptoms has to do with the dose of steroid that's in the system, what you were getting to earlier, Your Honor. The higher the level, the more likely you are to suffer this type of condition. So the extra length of time that Walgreens incorrectly filled this prescription, that curve generally increased and raises her levels of steroids and hormones or steroids in her blood even higher. Dr. Hall's testimony clearly supported plaintiff's version of causation, and he was very clear with respect to foreseeability and causation. In addition to the testimony that he testified to in his deposition, plaintiff attached an affidavit, which it is plaintiff's contention that that affidavit was inappropriately stricken from her response to the motion for summary judgment. To summarize Dr. Hall's testimony regarding foreseeability, he stated that while it is known that some people will develop steroid psychosis, it is difficult to predict which person will develop steroid psychosis from taking prednisone. That does not change the fact that Walgreens could have foreseen that steroid psychosis was a side effect of prednisone, and increasing the length of time Mrs. Burchett took the medication increased her risk of developing this disorder. Defendant notes in his reply brief that both Dr. Chase and Dr. Hall testified that a 10-day dose of prednisone as prescribed by a doctor may fall within the standard of care. Again, this is not the issue. Standard of care was not raised by the defendant until the reply brief and in the oral arguments in the trial court. The issue here is not whether it would have been appropriate for a doctor to prescribe a 10-day dose of prednisone. The issue is not whether it would have been appropriate for Walgreens to fill any such prescription for a 10-day dose of prednisone. The issue is whether it was appropriate for Walgreens to double the doctor's written prescription for Mrs. Burchett and whether steroid psychosis was a foreseeable outcome of this overdose. Both of the independent treating physicians and plaintiff's expert psychiatrist testified at deposition that Mrs. Burchett's steroid psychosis was a result of the prednisone prescription. Not could have been, not possibly, was. Dr. Hall testified that while a number of factors, including individual susceptibility, determine whether a specific individual will actually develop steroid psychosis, another factor is dosage. The longer an individual is on prednisone, the more likely they are to develop this problem. Dr. T has also testified that higher doses of medication are more likely to cause steroid psychosis. In conclusion, plaintiff appellant has raised a genuine issue of material fact with regard to the issues of foreseeability and proximate cause. Thus, the trial court erred in granting the defendant's motion for summary judgment, and this honorable court should reverse and remand this case for trial. Just one question before you sit down there. Did anybody ask Dr. Tyler why he wrote it for five days instead of ten or something like that? I mean, if that's all within the, if you have medical testimony, the ten would have been in the range of reasonable medical practice. Anybody ask Tyler why he wrote it for five? No, his deposition was never taken. Okay, thank you. Thank you. You'll have time for rebuttal, as you said. Counsel? May I please report, counsel? My name is Garrett Bain. I represent the defense in this matter. Counsel, your opposing counsel alluded to something that is a threshold matter we should probably settle. There's no question that Walgreens misfilled the prescription, correct? I believe there is no reason to dispute that.  The real issue is whether or not there's a tribal issue as to proximate cause. Is that really the crux of why we're here? The crux of why we're here today, Your Honor, is proximate cause, and I believe really the crux is a matter of legal cause rather than cause in fact. Cause in fact, it would be difficult for me to say there may not be a genuine issue of material fact that may prevent summary judgment as to cause in fact, but as to legal cause, I don't believe that exists because the foreseeability prong, which is legal cause essentially, has not been met. And why has that not been met? Because I think the unassailable verity in this case, based upon the record and available testimony, is that this was an unpredictable event. Now, if it's an unpredictable event, how can that be foreseeable? It may be a possibility, but a possibility doesn't satisfy reasonable foreseeability. There's no evidence in the record that would link the misfilled prescription in taking it too many days, even under false testimony, could passively or foreseeably result in an injury? It's unforeseeable that that would happen? The testimony by a plaintiff's expert, don't take my word for it, don't take the trial court's word for it, but I think maybe we need to take the expert's word for it. And that is Dr. Paul, who has a CV that is 10 feet long, and he says this is an unpredictable event on two different occasions. And then he says, was this foreseeable? And he says, no, it wasn't foreseeable. I think it's pretty difficult to get past that. And it's plaintiff's burden to show that it is foreseeable, not defendant's burden to show that it's not foreseeable. And what about the supplementary affidavit that was stricken? Granted, it's now stricken, but there's an issue in this case. As you know, one of the issues on appeal was whether or not it was properly stricken. Correct. Would it all opine in the supplementary affidavit? I think the salient information is, he said, with respect to foreseeability, it is my opinion that any time a patient is prescribed prednisone, an adverse reaction such as steroid psychosis is possible and should and can be anticipated by the practitioner either prescribing or filling the medication, which is why each and every patient should be warned of the possible adverse reactions. So wouldn't that be sufficient in the summary affidavit to raise the issue, a tribal issue, of foreseeability based on that? The problem is that it's contradictory with what he stated in his deposition. Basically, that it was not predictable and it was not foreseeable. So to the extent that this affidavit says that it is foreseeable, I think that it was properly stricken and it was not an abuse of discretion for the trial court to strike that affidavit. So did he directly answer your alleging in his deposition the foreseeable issue? He directly answered that. Opposing counsel indicated it was a matter of clarification. He wasn't really pinned down on that issue. I think he was pinned down, and I think I can recite from the record again. So this was on page 312 of the record, for instance. So it would be fair to say that it would not have been foreseeable to Dr. Tyler if he had written the prescription for 5 to 10 days to believe that she would have developed steroid psychosis as a result of a prescription in that range. Ms. Lynch, objection, relevance. Answered, that is correct. And says, okay, therefore, you would agree with me that it wouldn't be foreseeable to a pharmacist that she could develop steroid psychosis as a result of taking what would otherwise be a prescription within the standard of care. And then he goes on to say, just to clarify a bit, pharmacists routinely, I think, warn patients on steroids about what the possible side effects are, one of which is that they might develop central nervous system of emotional psychiatric cicada to the use of the drug, not that they would anticipate that there would be a specific reaction for a specific patient. There's additional testimony about foreseeability on page 318 of the record, and then on page 330 and 331 of the record indicates that it's not predictable and not foreseeable. I believe this is in the briefs, but just another example. And I believe this question, and I believe I said before it's not foreseeable that someone would have a steroid psychosis as a result of taking these medications. You did just state a minute ago that this is a very unpredictable event. Answered, that's correct. So based upon that deposition testimony, I would submit that either the affidavit is contradictory, and if it's not contradictory, then it has to be in accord with the deposition testimony, and the deposition testimony is very clear that it's not a predictable event and it's not foreseeable. Based upon that record, I don't think that this court should conclude, this court can't conclude that it was a foreseeable event under Lee v. CTA or First Springfield v. Goldman. Counsel, let me ask you here. I thought Hall was asked in his deposition if she would have experienced the same reaction if she had taken the prednisone for only five days, and he said, I think he said in response, it's possible but less likely. Right. That comes in his deposition testimony seems to be that it's less likely if it stops after five days, taking the medicine. I think that's accurate, he does say that. And your position is when he says it's possible, that that's not enough to make it foreseeable. Right. What does he have to say then? I think he has to satisfy the test in Lee v. CTA, which is that the inquiry is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct. I think likely result means probable. I think it has to get to the stage where it's probable, not just possible, or maybe a little more possible. So in this situation, we know that a core, I think the experts are pretty much in accord that it's like a small percentage of people experience this psychosis. And there seems to be an increased likelihood, depending on the amount and how long you take it, but even with that, it still remains somewhere in the range of like 3 to 5 percent of people develop this psychosis. And so if that's as a given, then your position would be that that's never more probable than not. It's only 3 to 5 percent. You'd have to have medical testimony in any of these kinds of situations that it's better than 50 percent of the people are going to develop some adverse reaction to the medicine. I don't know that it has to be that definitive, but I think that there has to be some testimony indicating that it is a likely result, that it is foreseeable. Now, maybe to a medical expert, he or she may decide, well, at a 30 percent range, it's foreseeable, or at a 25 percent range, it's foreseeable. But here, in the 3 to 5 percent range, the testimony is that it's unpredictable, that it's unforeseeable. And I don't think it gets to the point. I said probable before, and that assumes 50 percent or 51 percent. But an expert, medical expert, may decide that that's really not what he considers to be the range for foreseeable. Maybe it's 30 percent. Maybe it's 25 percent. But here, we haven't gotten to that point. Counsel, this matter went out in a summary judgment motion, correct? Correct. What about the argument that summary judgment is a drastic means of disposing of a case, should not be granted unless the movement's right to judgment is free of any doubts, and as a corollary, the proximate cause is generally, under the case law, to be determined by the trier of fact. So why shouldn't the plaintiff ever gain court? Because there's also law that indicates when there's only one possible conclusion based upon the record that it becomes a question of law, a question for this panel to decide. And I think that's where we are here, based upon the deposition testimony again. Thank you, Your Honors. And Ms. Lynch for rebuttal, please. With respect to the affidavit that plaintiff contends was improperly stricken by the trial court, if you take Dr. Hall's testimony as a whole, and don't just pick pieces from it, Dr. Hall testified that the likelihood of developing symptoms has to do with the dose of the steroid that's in the system. The higher the level, the dose of steroid, the more likely you are to get this condition. So the extra length of time that Walgreens incorrectly filled the prescription for, let that curve increase and raise her levels even higher. So that's why he believes that there's a relationship. So clearly there is proximate cause testimony contained in that deposition testimony, specifically with respect to foreseeability as well. So I hope that if you take his testimony as a whole, you reach the finding that the affidavit that plaintiff submitted with her response is not inconsistent with his deposition testimony. Now, with respect to the contention that plaintiff raised that was not addressed until Justice Hudson raised it, there is no reason why the jury shouldn't have been able to decide proximate cause in this case. Absolutely none. It's not addressed by the defendant's brief. It wasn't addressed by the defendant's oral argument until specifically asked. They simply ignore this argument when clearly in this case there are issues of material facts that are disputed and proximate cause should have been left for the jury to decide. Plaintiffs were improperly denied their right to a trial by jury in this case. Now, with respect to the five days, there's an issue that Dr. Chase raises, who's an independent physician, that she says is significant. That five days is significant because after a certain amount of time, once that is in your system, your adrenal glands shut down. And Dr. Hall testified that it's possible but less likely that this injury to Mrs. Burchie would have occurred at five days. So even the independent physician supports plaintiff's issue with respect to that causation. Now, is there any evidence in this case that they present anything other than my own retained expert witness, that anything other than defendant's negligence caused Mrs. Burchie's injuries, that she had some sort of allergic reaction, that there was any other cause of her injuries? They did raise that she was taking some hormone replacement therapy, which does complicate the issue. That is raised in the – Dr. Hall testifies that a little bit, but as far as them presenting any independent physician testimony, any favorable causation testimony on their side, there's nothing. Some of the words the defendant relies on in their brief and in their argument, guess, speculation, possibility, an unpredictable event. None of these words appear – or Dr. Hall does testify that it was an unpredictable event, but the key is it's not the law in Illinois that a specific injury or result be predictable. That would require a crystal ball. Fortunately, that's not the law in this state. It implies – defendant's argument implies that you have to predict the future in order to be negligent and recover in this state, and there's simply – that's not the law in the state of Illinois. There's no causation evidence that supports the defendants. Well, the question I had, I guess, from their folks, I had this number of 3 to 5 percent in my head. I don't know if that's correct or not, but it seemed to me your folks pretty much said 3 to 5 percent of the people get it. It doesn't – 3 to 5 percent of them get it whether they have the prescription for 3 days, 5 days, or 10 days, although at another point they said the longer you take it, it increases. So the number seemed – that's relevant here is that it's 3 to 5 percent for no matter how many times you take it, but that isn't quite accurate because the longer you take it, it rises from – the people who have it for 10 days, they go from 3 to 5 percent to 7 to 12 percent, but we didn't get to that from your experts. They didn't quantify what the increase is. I think they said that there's an increased likelihood, but they didn't quantify what it was. And you're exactly right, Your Honor. We really didn't get that far. I'm assuming – they generally say that there is an increased likelihood the more steroids you get in your system. You're exactly right, but it was not quantified for how much for a 10-day prescription, a 12-day prescription. Well, how does that affect his point is that when there's a possibility of something happening, that's just not enough to make it legally foreseeable. It has to be more than just a possibility because that would make everything legally foreseeable if it's just a, quote, mere possibility. The only time the word possibility came up was when Dr. Hall testified it was possible she could have had this reaction with a 5-day prescription. It's kind of a key point for it to come up, though. If she had the 5-day prescription, she didn't get the 5-day prescription. She got the 10-day prescription. So it's possible at any point whether she would have got a 3-day tapered dose. It's a known risk that pharmacies such as Walgreens routinely warn their patients about. But the key is, in this case, the more you get, the longer the dose, the more the risk goes up. That's the danger that they put and risk that they put to Mrs. Hershey. Final question. Did the evidence show on which day she began to show symptoms of the psychosis? Yes, it did. It differed a little bit, but generally speaking, Dr. Hall testified it started on, like, the 6th day, around day 6 or 7. And to be completely honest with you, I wouldn't have accepted this case if it would have occurred during days 1 through 5. So he indicated it was on the 6th or 7th day, which was past what the prescription was scripted for. And Dr. Hall specifically relied on that. In his causation testimony, he says, because this occurred on day 6, I believe there's a relationship to the negligence in the misfilled prescription. Actually, you brought up the days. She, the 6th day is actually the fifth and a half day of the prescription. Because she was supposed to take it twice a day. Day 1 is actually, she started the dose in the evening. At least that's what the record would show. So her first dose is the end of day 1, then all of day 2, day 3, day 4. And actually, part of the 5-day prescription would have been on day 6. Did anyone distinguish when on day 6 or how far past the 10th pill that the symptoms arose? Not specifically, Your Honor. Other than to say that Dr. Hall testified that his review of the symptoms that occurred on the 6th day of the symptoms and that he specifically relied on that wasn't really got into any more than that, Your Honor. If I could just make one final point. Sure, go ahead. One thing the defendant relies on in their brief, it's clear that this court may affirm a grant of summary judgment on any basis. We know you have that authority. But they state irrespective of whether the trial court relied on a ground or whether its reasoning was correct. Plaintiffs respectfully request this Honorable Court find that the trial court's reasoning was not correct in this case. Thank you. All right, thank you both for your arguments. The matter will be taken under advisement. Decision will issue in due course.